**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JERRICE YOUNG, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 24-cv-9602 |
| v. | ) | |
| | ) | Honorable Joan B. Gottschall |
| SPECIAL EDUCATION SERVICES d/b/a | ) | |
| Menta Academy North, | ) | |
| | ) | |
| Defendant. | ) | |

# MEMORANDUM OPINION AND ORDER

Before the court is defendant Special Education Services d/b/a Menta Academy North's (SES or Menta) Motion for Summary Judgment, Dkt. No. 32, on the Complaint, Dkt. No. 1, of plaintiff Jerrice Young (plaintiff or Young) charging sex-based discrimination (Count I), sex-based harassment (Count II) and retaliation (Count III). Count I is based on Menta's decision to terminate Young's employment, as is Count III. Count II seeks to hold Menta responsible for the sexual harassment of Young by a coworker, Leviticus Crump ("Crump"). For the reasons set forth below, Menta's motion is granted as to the issue of Menta's responsibility for the harassment of which plaintiff complains (Count II) but denied as to the issue of whether Menta's stated reason for plaintiff's termination was or was not pretextual (Counts I and III).

Most, but not all, paragraphs of Menta's Local Rule (L.R.) 56.1 Statement of Material Facts in Support of its Motion for Summary Judgment, Dkt. No. 34, are admitted. *See, e.g.*, Resp. to Def.'s Statement of Material Facts ¶¶ 1– 41, Dkt. No. 43. Rather than paraphrasing the undisputed statements of material facts, the court has elected to quote them verbatim or make minor non-substantive changes. In the "Facts" section of this opinion, references to each of defendant's L.R. 56.1 Statements of Material Facts are designated as D (for defendant), followed by the paragraph number, followed by the letter "A" if the paragraph is admitted in whole. If the

paragraph is not admitted or admitted in part and denied in part, plaintiff's response will be set forth, with supporting record references where appropriate.

Young has filed an L.R. 56.1 Statement of Additional Material Facts, Dkt. No. 44, but as Menta has properly pointed out, Young in many instances cites only her Complaint as support for a factual assertion. This is insufficient. *See* Fed. R. Civ. P. 56(c)(1); *Brown v. Advoc. S. Suburban Hosp.*, 700 F.3d 1101, 1105 (7th Cir. 2012). However, Menta has filed, in support of its motion significant excerpts from Young's deposition, Dkt. No. 34-1, the Zion Police Department Case Report relating to the assault on Leviticus Crump, Dkt. No. 34-2, and Menta's Harassment Report Summary, averred to be an accurate summary of Menta's investigation by the accompanying affidavit of Richard Grenda, Dkt. No. 34-3. In a number of instances plaintiff's Statement of Additional Material Facts relies on these exhibits. To the extent the court has relied on these documents, it has cited them.

**FACTS**

Plaintiff Jerrice Young is female and at all relevant times was pregnant, being therefore in a protected class. Menta's answer admits that Young is female. Ans. ¶ 15, Dkt. No. 26. Young has testified under oath in her deposition that she was pregnant at the time of the events at issue in this lawsuit. Young Dep. 55:19–56:12, Dkt. No. 34-1.[1] Menta denies knowledge of Young's pregnancy although Young testified that she provided a doctor's note during her employment to a Menta employee named Sabrina, whom the court believes from the record to be Sabrina Mays, a Human Resources Manager. *Id.* at 51:12–23; Ans. ¶ 15.

SES hired plaintiff on June 2, 2024, as a teaching assistant at Menta, a school that supports children with disabilities and special needs, such as autism and emotional and behavioral issues. D1A. Plaintiff reported to the principal of Menta, Amy Razzino. D2A. At the start of her employment, plaintiff received training on Menta's Bullying and Harassment Policy. D3A. The Bullying and Harassment Policy states as follows: "Any individual who

[1] References to pages of plaintiff's deposition refer to the deposition's internal pagination.

believes he or she has been the victim of bullying, discrimination, harassment or retaliation, as set forth above, by any other individual should report the alleged acts immediately to the SES Human Rights Officers, Cara Sullivan or Richard Grenda, who are the designated individuals who respond to actual notice of an allegation and who oversee the implementation of the Policy." D4A. Plaintiff knew that Menta had an anti-harassment policy and a process to submit complaints. D5A.

When she was hired, plaintiff filled out an employment contact form that listed Quincy Collins, her "significant other," as her emergency contact. D6A. Plaintiff dated Collins (who is the father of her son) for nearly two years, from July 23 until May 2025, and the two lived together. D7A. During her time at Menta, plaintiff worked with another teaching assistant named Leviticus Crump. D9A. At some point in June 2024, two weeks into plaintiff's employment, Crump asked plaintiff what she was doing for Father's Day with "her man," which caused plaintiff to feel uncomfortable, so she reported Crump's conduct to a police officer who happened to be at the school. D10A. At the time, plaintiff did not tell Menta that she had made a police report against Crump. D11A.

According to plaintiff, Crump made comments about plaintiff's body, such as telling her that she was beautiful, her "titties were sitting up nice," and her "butt looked nice." D12A. Crump also asked for her phone number. D13A. On June 21, 2024, Crump touched plaintiff's hair and asked if it was her natural hair. D14A. Crump stared at plaintiff with a creepy look. D15A. On June 27, 2024, in the presence of Jess Rainy [the classroom teacher], Crump touched plaintiff's arm, causing Rainy to tell him he needed to leave. D16A. Plaintiff does not know if Crump knew she was pregnant or if Crump harassed her because she was pregnant. D17A.

As of June 26, 2024, plaintiff had not told any supervisor at Menta that she was feeling harassed and specifically wrote in a June 26 email to her coworker, Danielle Grimmer, that she chose "to not share this matter with other supervisors." [2] D18A. As of June 26, 2024, plaintiff

[2] Grimmer is identified frequently as a "recruiter" and in D18 as a coworker. The court has found no evidence in the summary judgment record that she was, or was not, a supervisor.

had chosen not to tell Menta's management about the alleged harassment because she did not "know how to express it" and felt like she had to "watch who she expressed herself to or who she went and told it to because she didn't want to feel like the outsider." D19A. On June 26, however, in her email, plaintiff asked Grimmer to speak with someone "about a workplace matter" because one of her coworkers was "harassing" her. D20A.[3]

The next morning, at 8:57 a.m., on June 27, 2024, plaintiff sent an email to Sabrina Mays, Sullivan, and Razzino, stating that a "coworker has been consistently harassment [sic] her and engaging in inappropriate physical contact." D21A. Also on June 27, after Crump touched her hair [the sequence of events on June 27 is not entirely clear], plaintiff told Amy Razzino [Menta's principal] that Crump had touched her hair and had been coming into her class, and that it was making her very uncomfortable. D22A. [It is not clear who initiated this conversation or how.] Razzino said she would speak with Crump and address the situation. D23A.[4]

Twenty-five minutes after plaintiff's conversation with Razzino, Crump went into the classroom where plaintiff was working, causing plaintiff to again feel harassed. D24A. [It is not stated that Crump did anything at this point other than enter the classroom.] Because Razzino did not speak with Crump within that 25 minute window, plaintiff believes Razzino did not appropriately prioritize the matter. D25A.

On that same day, June 27, 2024, plaintiff filed court papers seeing a Stalking No Contact order against Crump. D26A. Also on June 27, 2024, at 5:59 p.m., plaintiff sent an email to Lynne Nicolas, Menta's Chief Operating Officer, stating that she felt "uncomfortable and unsafe" due to "harassment" in the workplace. D27A. Nicolas forwarded plaintiff's email to Sullivan, so Sullivan called plaintiff and told plaintiff the issue was being investigated. D28A. The next

[3] Grimmer forwarded plaintiff's email to Cara Sullivan. Plaintiff's email to Grimmer appears to have been sent on June 26, at 3:56 p.m. Grimmer appears to have forwarded it to Sullivan on June 27, at 9:14 a.m. Dkt. No. 34, Ex.C at 6.

[4] Sullivan and Grenda, Menta's Human Rights Officers, called plaintiff by telephone at 11:18 on June 27 and explained to plaintiff the process for the formal investigation that would occur. They told plaintiff that they would be at Menta Academy North on June 28, 2024, to speak with her in person. Dkt. No. 34, Ex.C at 6 .

day, on June 28, 2024, less than 24 hours after plaintiff first reported the issues to Menta management, Nicolas responded to plaintiff, informing plaintiff that her complaint had been forwarded to Menta's Human Rights Officers and would be thoroughly investigated. D29A. That same day, on June 28, 2024, Rich Grenda and Cara Sullivan met with plaintiff and interviewed her about her complaint, and they also separately interviewed each of Sabrina Mays, Monique Bates, LaTrenda Lee, Rachel Bell, and Crump. D30A. Plaintiff was not privy to the actions Menta took to investigate her complaint. D31A.

From that point forward (June 28, 2024), plaintiff did not have to interact with Crump again, did not have to speak to Crump again, and was not in the same room with him again. Crump was off work beginning on June 28, 2024. D32A. Plaintiff submitted the Stalking No Contact order to Menta on June 28, 2024. D33A. On that same day, a police officer came to Menta and informed school administrators, including Razzino, that plaintiff had obtained an order of protection against Crump. D34A.

On or about July 3, 2024, Menta conducted [completed?] its investigation [and] issued Crump an oral and written reprimand due to his interactions with Young. D35A. Plaintiff was off work on medical leave from July 31, 2024, through August 9, 2024, and claimed she was completely unable to work during that time. D36A.

On June 28, 2024, Menta learned that Crump had been physically attacked that evening after work. D37A. [Both Menta's fact statement and plaintiff's admission are either erroneous or confusingly phrased. The affidavit of Rory Conran and the Zion Police Department Case Report attached to it indicate that the attack on Crump occurred after work on June 27. Dkt. No. 34-2, par. 6 of Conran's affidavit and page 1 of Ex. 1, the Case Report. Conran's affidavit avers that Menta learned of the attack on June 28.]

On July 22, 2024, while investigating the attack on Crump, police officer[s] went to plaintiff's house to question her about the day Crump was attacked and told her that her car was at the scene of the attack. D38A. Plaintiff told the officer that her car may have been in the shop on June 27 (the day of the attack), but the car was actually with a friend who was fixing it, even

though plaintiff does not know what was wrong with the car, does not know the friend's last name, does not have the friend's phone number, does not know where the friend lived, and does not know how her car got to the friend's house. D39A. According to the police report, the conversation ended when plaintiff declined to make any further statement. D40A.

On or about August 9, 2024, Crump gave Menta a copy of a Case Report and Summary of Investigation from the Zion Police Department, which stated that the individual who attacked Crump was Quincy Collins, plaintiff's boyfriend, and at the time of the attack, he was driving a Blue Jeep Cherokee that was registered to plaintiff. D41A. The Case Report indicated that Collins was arrested on July 23, 2024, and charged with battery. D42.

Plaintiff denies that the Case Report says that Collins was arrested, admitting only that a warrant was issued, but the Case Report, Dkt. No. 34-2, states at page 2 that Collins was arrested on July 23, 2024, for simple assault.

The Case Report and Summary of Investigation also stated that another Menta employee, Rachel Bell, told the investigating police officer that she had been told by a coworker that plaintiff had given Crump's information to Collins and had Collins target Crump on her behalf. D43A. After receiving the police Case Report, Menta discovered in plaintiff's personnel file that Collins was plaintiff's emergency contact, he was listed as her "significant other," and he lived at the same address as plaintiff. D44. Plaintiff admits this statement except she denies that her personnel file provides Collins's residence. Resp. to Def.'s Statement of Material Facts ¶ 44.

Since November 2020, plaintiff has owned a blue 2017 Jeep Grand Cherokee that is registered to her with a license plate number CK 51073, and it was not uncommon for Collins to drive plaintiff's Jeep. D45A.

Based on this information [the police Case Report], Sullivan and Grenda interviewed Bell on August 9, 2024, and learned that Monique Bates was the employee to whom plaintiff had said she was involved in the attack on Crump. D46A. That same day (August 9), Sullivan and Grenda interviewed Bates, who revealed that, on the day Crump was attacked, plaintiff told Bates she was going to "get my brother or boyfriend to find him and beat his ass." D47.

Plaintiff admits that this is what Bates said, but denies all other allegations in D47. Resp. to Def.'s Statement of Material Facts ¶ 47.

Based on the "overwhelming evidence"[5] connecting plaintiff to the attack on Crump, Rory Conran, CEO of Menta, made the decision to terminate her employment. D48. Plaintiff admits that this is the justification given by Conran for her termination, but otherwise denies this statement and denies in particular that there was "overwhelming evidence." Resp. to Def.'s Statement of Material Facts ¶ 48.

On August 12, 2024, Sullivan called plaintiff and said that Menta was terminating her employment for her role in causing harm to another Menta employee. D49. Plaintiff admits that she received a call from Sullivan informing her of her termination, but denies that she had a role in causing any harm to any other Menta employee. Resp. to Def.'s Statement of Material Facts ¶ 49. On the same date, Menta sent plaintiff a letter stating that her employment was terminated for her "role in threatening and/or harming another Menta staff member." D50. Plaintiff admits that she received a letter informing her of her termination but denies any role in threatening and/or harming another Menta staff member. Resp. to Def.'s Statement of Material Facts ¶ 50.

Plaintiff does not know who at Menta made the decision to terminate her employment, how Menta came to the decision to terminate her employment, or what type of investigation went into the decision to terminate her employment. D51A.

Plaintiff believes Menta harassed her based on her pregnancy because Menta asked her to drive the van of students, even though Menta did not require her to drive after she said she submitted a doctor's note. D52. This statement is admitted in part and denied in part. Resp. to Def.'s Statement of Material Facts ¶ 52. Plaintiff believes Menta treated her worse than others based on her pregnancy by asking her to work as an aide on the student van, but she acknowledged that non-pregnant employees also served as aides on the student vans. D53. This statement is admitted in part and denied in part. Resp. to Def.'s Statement of Material Facts ¶ 53.

[5] It bears repeating that this statement, and those discussed above, are taken from Menta's Statement of Material Facts, Dkt. No. 34, verbatim or "cleaned up" in insignificant ways.

The only other way in which plaintiff believes Menta treated her different [sic] based on her pregnancy because [sic] the staff member who came to relieve plaintiff for her bathroom breaks commented about how many times plaintiff went to the bathroom, but that staff member did not know plaintiff was pregnant. D54A.

Plaintiff believes Menta treated Crump more favorably because "he was given a fair chance" and "an investigation" after she accused him of harassing her, but she also acknowledged that the conduct that led to her termination was "very different" than the conduct of which she accused Crump. D55A. Plaintiff is not aware of any employee who did not engage in a protected activity but was treated more favorably. D56A. She is unaware of any other employee of Menta who was involved in a physical assault on another employee but was not fired. D57A.[6]

On July 17, 2024, while she was still working for Menta, plaintiff accepted a full-time job at The Place for Children With Autism, which she began on August 5, 2024. D58A. Plaintiff is seeking $1,364 in lost wages. D59A. Plaintiff is seeking $30,000 for emotional distress. D60A.[7]

## SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When a summary judgment motion is filed, "the court has one task and one task only: to decide . . . whether there is any material dispute of fact that requires a trial." *Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 893 (7th Cir. 2018) (quoting *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003)). A genuine dispute as to any

[6] It is clear from Young's responses to Menta's Statement of Material Facts that she does not consider Crump's touching a "physical assault." *See, e.g.*, Resp. to Def.'s Statement of Material Facts ¶¶ 14, 16, 22.

[7] Menta requests that the court enter judgment in favor on Menta on lost wages and emotional distress damages in excess of these amounts. Menta provides no authority for this request, and the court is aware of none. *See* Fed. R. Civ. P. 54(c).

material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

A party moving for summary judgment bears the initial burden of "pointing out to the district court that there is an absence of evidence supporting the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once this initial burden has been discharged, the nonmoving party must "go beyond the pleadings," *id.* at 324, and "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (quotation omitted). At summary judgment, "facts must be viewed in the light most favorable to," and all reasonable inferences from the evidence must be drawn in favor of, the nonmoving party—but "only if there is a genuine dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citation modified). Thus, summary judgment is warranted when the nonmoving party cannot establish an essential element of its case on which it will bear the burden of proof at trial. *Kidwell v. Eisenhauer*, 679 F.3d 957, 964 (7th Cir. 2012).

## ANALYSIS

### CRUMP'S HARASSMENT AND MENTA'S RESPONSIBILITY

To prove the existence of a hostile work environment sufficient to sustain a sexual harassment claim, a plaintiff must establish that Crump's conduct was severe and pervasive enough, both subjectively as the plaintiff experienced it and objectively as a reasonable person would experience it, to be abusive. *Sanchez v. El Milagro, Inc.*, 176 F.4th 961, 968–69 (7th Cir. 2026); *Anderson v.Mott Street*, 104 F.4th 646, 652 (7th Cir. 2024). In this case, Young's deposition testimony and the complaints she made to various Menta personnel make reasonably clear that she subjectively experienced Crump's conduct as abusive. Young Dep. 60:9–24; 63:9–20; 66:22–67:9; 72:6–73:19; 81:5–24.

Objectively, the case is somewhat closer, as Young has reported only a few instances of touching, *id.* at 74:2–19, and a handful of remarks (including comments on her "titties" and her "butt'), but she has also testified that Crump came into her classroom when he had no reason to

be there, asked her personal questions, stared at her in a "creepy" way, and cornered her. *Id.* at 61:10–63:23; 66:22–68:23; 72:6–73:22; 87:6–18. Significantly, Young has testified that on at least one occasion, the classroom teacher, Jess Rainy, saw Crump's behavior, told him to stop, and ordered him out of the classroom. *Id.* at 75:2–76:13. This is some evidence that an objective third party saw Crump's behavior as problematic. In addition, plaintiff obtained an order of protection and Menta ultimately imposed discipline on Crump. Considering that Young was a new employee (she testified that Crump's harassment started soon after she started her employment, *id.* at 66), and that Crump's inappropriate behavior occurred during a short span of roughly three weeks (approximately June 5, 2024, through June 27, 2024), the court finds that Young could persuade a jury that the harassment was subjectively and objectively severe and pervasive enough to be abusive.

The court thus concludes that Young has enough evidence to present a sexual harassment case to a jury, if that were the issue in this case. It is not. Even if Young could prove that Crump sexually harassed her, because Crump was merely a coworker, Young has to prove that Menta was negligent in controlling Young's working conditions. *See El Milagro,* 176 F.4th at 971. To prove Menta's negligence, Young must establish two things: "first, that [Menta] had 'notice or knowledge of the harassment,'" *id.* (quoting *Parkins v. Civ. Constructors of Ill., Inc.*, 163 F.3d 1017, 1035 (7th Cir. 1998)), and second, "that [Menta] did not take 'prompt and appropriate corrective action reasonably likely to prevent the harassment from recurring.'" *Id.* (quoting *Cole v. Bd. of Trs. of N. Ill. Univ.*, 838 F.3d 888, 898 (7th Cir. 2016); other citation omitted).

Young has admitted that when she was hired, she received training in Menta's Bullying and Harassment Policy, which stated that any employee "who believe[d] he or she has been the victim of bullying, discrimination, harassment or retaliation . . . should report the alleged acts immediately to the [Menta] Human Rights Officers, Cara Sullivan or Richard Grenda, who are the designated individuals who respond to actual notice of an allegation and who oversee the implementation of this Policy." Resp. to Def.'s Statement of Material Facts ¶ 4. Young admits that she knew of the existence of the policy and the process to submit complaints. *Id.* ¶¶ 3–5.

Crump's harassment, according to plaintiff, began just a few days after she started working at Menta, on June 5 or 6, 2024. *Id.* ¶ 3. Young admits, however, that she did not at that time complain to Sullivan or Grenda, and did not advise Menta that she had made a complaint to a police officer about Crump. Indeed, when Young reached out to her coworker, Danielle Grimmer, on June 26, Young said explicitly that she had chosen not to share this information with "other" supervisors. *Id.* ¶¶ 18–19. Young said that as of June 26, she did not know how to express what was happening to her and did not want to "feel like the outsider." *Id.* ¶ 19.

Plaintiff, therefore, first notified Mays, Sullivan and Razzino in an email on June 27, 2024, at 8:57 in the morning. *Id.* ¶ 21. That email does not appear to have included the name of the alleged harasser. On that same date, Young spoke to Razzino about Crump's harassment. *Id.* ¶¶ 21–22. Razzino told Young she would speak to Crump. *Id.* ¶ 23. But within twenty-five minutes of that conversation, Crump entered Young's classroom again (what, if anything, he did besides entering is not clear). *Id.* ¶ 25. Young obtained an order of protection that day. *Id.* ¶ 26. Later in the day, Young emailed Lynne Nicolas, Menta's COO, who forwarded the email to Sullivan, who called Young and told her the issue was being investigated. *Id.* ¶¶ 27–28. By the next day, June 28, 2024, Grenda and Sullivan were interviewing the involved parties, and a few days later, they issued Crump an oral and written reprimand.[8] *Id.* ¶ 29.

Young's belief that Crump's entry into her classroom twenty-five minutes after she first spoke to Razzino establishes that Menta was not reacting promptly and appropriately is unreasonable. *Id.* ¶ 25. Within twenty-four hours of Young's first notification to management of what was occurring, Menta was investigating her complaint, and it acted quickly to impose discipline on Crump. Perhaps most importantly, Young does not dispute that after Crump's entry into her classroom twenty-five minutes after she spoke to Razzino, she never had to interact with Crump again. *Id.* ¶ 32. It is perhaps understandable that Young waited three weeks to elevate

---

[8] *See* note 4, *supra*. According to Menta's Harassment Report Summary, Grenda and Sullivan reached out to plaintiff by telephone less than three hours after her June 27, 8:57 a.m. email, explaining the investigation process and telling her they would meet with her at the location where she worked on the following day.

her issue to the attention of management. But she cannot delay bringing her issue to management's attention for weeks and then expect management to address her issue *immediately*. By the next day, Menta was engaged in a thorough investigation, and the harassment did not recur. *See Clacks v. Kwik Trip, Inc.*, 108 F.4th 950, 957–58 (7th Cir. 2024); *Paschall v. Tube Processing Corp.*, 28 F.4th 805, 812–13 (7th Cir. 2022).

Menta's motion for summary judgment on the issue of its responsibility for Crump's harassment is granted.[9]

**YOUNG'S TERMINATION**

The test in the Seventh Circuit for determining whether Young is entitled to a jury trial on the issue of whether she was the victim of discrimination in connection with her termination is whether a reasonable juror could conclude that Young would have kept her job had she not been female or pregnant (gender or pregnancy discrimination) or had not complained of her coworker's alleged sexual harassment (retaliation) and everything else had remained the same. *See Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2015).

On the evening of June 27, 2024, after work, Crump was physically attacked by a male individual driving a vehicle registered to Young. Resp. to Def.'s Statement of Material Facts ¶ 37. The Zion Police Department investigated the attack, determining that the perpetrator was Quincy Collins, Young's significant other. *Id.* ¶ 41. The police report indicates that Collins was charged with assault and arrested on July 23, 2024. Zion Police Department Case Report at pages 1–2, Dkt. No. 34-2, Ex. 1.

According to the police report, Crump went to the Zion Police Department on July 22, 2024, accompanied by a coworker, Rachel Bell, whom the police report identified as a "friend"

[9] The court has no way of determining whether the reason Young never suffered further harassment from Crump was due to Menta's investigation and discipline, the order of protection Young obtained, or the fact that Crump was injured on the evening of June 27 and was on medical leave from that date to and including August 26, 2024, by which time Young had accepted another job. The only thing that can be known with certainty is that within hours of Young's alerting Menta management to the harassment, the harassment never recurred. When it is clear that no further harassment occurred, there is no basis for a jury to conclude that Menta's response was ineffective in preventing it.

of Crump's. According to Bell, the police report states, "someone" told Bell that Young told "someone" that Young had given Collins information about Crump, and had Collins target Crump on Young's behalf. Zion Police Department Case Report at page 7, Dkt. No. 34-2, Ex. 1; Resp. to Def.'s Statement of Material Facts ¶ 43. When Menta received the police report, it discovered that Collins was listed in Young's personnel file as Young's emergency contact and significant other. *Id.* ¶ 44. Based on the information obtained from the police report, Sullivan and Grenda interviewed Bell on August 9, 2024, and learned that Monique Bates was the "someone" Bell had told the police about. *Id.* ¶ 46. Sullivan and Grenda interviewed Bates on the same day. Bates stated that Young had told her that "she was going to 'get my brother or boyfriend to find [Crump] and beat his ass.'" *Id.* ¶ 47.

As has been repeatedly stated, "the court 'is not a super personnel department that second-guesses employers' business judgments.'" *See, e.g., Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 570 (7th Cir. 2017) (quoting *Riley v. Elkhart Cmty. Sch.*, 829 F.3d 886, 895 (7th Cir. 2016)). *See also Giannopoulos v. Brach & Brock Confections, Inc.*, 109 F.3d 406, 410 (7th Cir. 1997). Where the issue is whether an employer's proffered reason for an adverse action against the plaintiff is truthful or pretextual, the issue is not the wisdom of the decision, but its genuineness. *Galvan v. Indiana*, 117 F.4th 935, 939 (7th Cir. 2024).

Nevertheless, in assessing whether the court should accept the employer's explanation or allow plaintiff to present the issue of the credibility of the employer's explanation to a jury, the court need not abandon good reason and common sense. *See Peters v. Renaissance Hotel Op'g Co.*, 307 F.3d 535, 547 (7th Cir. 2002). A "determination of whether a belief is honest is often conflated with analysis of reasonableness." *See Flores v. Preferred Tech. Grp.*, 182 F.3d 512, 516 (7th Cir. 1999). "[T]he more objectively reasonable a belief is, the more likely it will seem that the belief was honestly held." *Id.* "[E]vidence that a defendant's explanation for an employment practice is 'unworthy of credence' is 'one form of circumstantial evidence that is probative of intentional discrimination.'" *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 100 (2003) (emphasis omitted) (other citation omitted). Seventh Circuit cases make clear that the court need

not take an employer at its word. *See Gordon v. United Airlines, Inc.*, 246 F.3d 878, 889 (7th Cir. 2001).

As the court found above in granting Menta's motion for summary judgment on the issue of its responsibility for Crump's harassment, Menta knew well how to conduct a prompt and thorough investigation. It expeditiously interviewed all the involved personnel, including Young and Crump, and it reached a measured decision soon after the completion of its investigation. In the case of Young's responsibility for Collins's attack on Crump, however, Menta apparently interviewed only Bell (whom the police identified as Crump's friend) and Bates, whose relationship, if any, with Young and Crump is unknown to the court. Young was never interviewed. Menta asserts that it made its decision to terminate plaintiff "[b]ased on the overwhelming evidence connecting [p]laintiff to the attack on Crump," but its "overwhelming evidence" included only the police report, which determined that the perpetrator, Quincy Collins, was driving a car registered to plaintiff and interviews with Bell (who was repeating what Bates had told her) and Bates. Def.'s Statement of Material Facts ¶ 48, Dkt. No. 34. The record makes clear that Collins had access to plaintiff's car. The police apparently concluded that they had no basis for charging plaintiff. Plaintiff's responsibility for what happened to Crump therefore comes down to what Bates said plaintiff told her.

The summary judgment record is devoid of evidence of any relationship between Young and Bates, such that Young, who was so cautious for so many weeks in voicing her complaints about Crump, would share with Bates such heinous intentions. Moreover, the summary judgment record is devoid of evidence that Menta had a reasonable basis for crediting Bates's report of what Young supposedly told her. Most importantly, the summary judgment record provides no indication of why Menta decided to fire Young without giving Young any opportunity to admit or deny Bates's accusation. Menta's reference to this evidence as "overwhelming" strikes the court as questionable enough to allow Young to present the issue of the credibility of Menta's explanation to a jury.

Menta's explanation for this significant adverse action, when it is clear that Menta knew how to conduct a more thorough investigation, in the case of a female individual (whom Menta may have known had just shown up for her new Menta job pregnant), and who had just made a complaint of sexual harassment, raises enough common sense questions that its credibility should be presented to a jury. Menta's motion for summary judgment on the issue of its good faith basis for its adverse action against Young is therefore denied.

## CONCLUSION

Menta's Motion for Summary Judgment [Dkt. No. 32] is granted as to the issue of Menta's responsibility for the harassment of which plaintiff complains (Count II) but denied as to the issue of whether Menta's stated reason for plaintiff's termination was or was not pretextual (Counts I and III). The parties are requested to file a status report on or before October 14, 2026.

Date: September 30, 2026

/s/ Joan B. Gottschall
United States District Judge